UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

RODNEY TIPTON,                        )
                                      )
        *Petitioner*,                 )
                                      )
v.                                    )        No.:   3:03-cv-434
                                      )               (VARLAN/SHIRLEY)
HOWARD CARLTON, Warden,               )
                                      )
        *Respondent*.                 )

## MEMORANDUM

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by

petitioner Rodney Tipton ("Tipton").  The matter is before the Court on the motion for

summary judgment filed by the Attorney General for the State of Tennessee on behalf of the

respondent, and Tipton's response thereto, and Tipton's motions for partial summary

judgment.  For the following reasons, Tipton's motions for partial summary judgment will

be **DENIED,** the respondent's motion for summary judgment will be **GRANTED**, and this

action will be **DISMISSED WITH PREJUDICE**.  All other pending motions will be

**DENIED** as **MOOT**.

# I.    Standard of Review

Under Rule 8 of the RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS, the Court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required.  If no hearing is required, the district judge is to dispose of the case as justice dictates.  If the record shows conclusively that Tipton is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied.  *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986); *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983).

# II.    Factual Background

The Attorney General has provided the Court with copies of the state court opinions and Tipton's briefs on direct appeal and in post-conviction proceedings.  [Court File No. 6, Attachments to Motion for Summary Judgment, Addenda 1-7].  The Attorney General has also provided copies of the technical record and the transcript of the evidentiary hearing with respect to Tipton's post-conviction proceedings.  [Court File No. 15, Second Supplemental Notice of Filing, Volumes I - VIII].  The Attorney General has been unable to provide the Court with the technical record and trial transcript on direct appeal because the record cannot be located.  [Court File No. 13, Supplemental Notice of Filing Document, Order from the

Tennessee Court of Criminal Appeals dated October 7, 2004, No. E1992-00018-CCA-MWR-CD].[1]

Tipton, together with co-defendant Bobby Davis, was convicted by a jury in Blount County, Tennessee, of aggravated rape and aggravated robbery. The convictions were upheld on direct appeal. *State v. Davis*, 872 S.W. 2d 950 (Tenn. Crim. App. 1993), *perm. app. denied, id.* (Tenn. September 7, 1993). The Tennessee Court of Criminal Appeals, on direct appeal, gave the following brief summary of the evidence:

> The proof adduced at trial reveals that on the evening of January 7, 1991, the victim went to the Red Food Store from her mother's house at approximately 11:30 p.m. She heard a car drive up fast behind her. At that time, a man tapped her window, jerked open her door, stuck a handgun in her side and said, "Move over, bitch." This man had on a ski mask. She gave him the keys as he demanded, and he started the car and drove out of the lot.
>
> She later saw the face of this man and identified him as the appellant Davis. He made her blindfold herself with a beach towel she had in her car. She heard a small car following them. Later that evening, she was able to see the face of the second man, and she identified him as appellant Tipton.
>
> In the course of the evening, the appellants drove the victim around stopping at intervals at which times she was repeatedly raped vaginally and anally, forced to perform fellatio and threatened at gunpoint. The victim was

---

[1]This Court ordered the Attorney General to file the transcripts of Tipton's trial and his post-conviction hearing, and the Attorney General moved, in the Tennessee Court of Criminal Appeals, to withdraw the archived records. With respect to the direct appeal, the state appellate court denied the motion to withdraw the record because the record could not be located. According to the appellate court, counsel for co-defendant Davis withdrew the record in 1997, for use in preparing a federal petition, and failed to return the record. Counsel was ordered to return the record, but was unsuccessful in his efforts to locate the record. The appellate court also noted that the tape recordings of the trial were no longer available and thus the court reporter was unable to furnish a replacement transcript.

taken to a motel just across the North Carolina state-line and was further raped. She remained in captivity throughout the following day until one of her captors wrecked her vehicle and eventually took her to another motel in Sweetwater, where the victim managed to escape.

*Id.* at 952.

Tipton next filed a state petition for post-conviction relief, which was denied on the merits after an evidentiary hearing and the Tennessee Court of Criminal Appeals affirmed. *Tipton v. State*, No. E2001-00001-CCA-R3-PC, 2002 WL 1400058 (Tenn. Crim. App. June 28, 2002), *perm. app. denied, id.* (Tenn. December 23, 2002). The Tennessee Court of Criminal Appeals in post-conviction proceedings expanded on the summary of the evidence against Tipton as follows:

On January 7, 1991, around 11:30 p.m., the victim, Cynthia Blair, was shopping at the Red Food grocery store, located on West Broadway in Maryville, Tennessee. She left the store and walked to her car. Upon entering her car, a second vehicle pulled up behind her to block her exit. A man, later identified as co-defendant, Robert Allen Davis, approached her vehicle and said, "Move over, bitch." Davis was wearing a ski-mask and carrying a revolver. She gave him the keys as demanded, and he started the car and drove out of the lot. Then, Davis ordered her to blindfold herself with a beach towel she had in the car. A second vehicle followed the victim's car. After driving for some distance, Davis stopped. The second vehicle stopped also, and a second man, later identified as the Appellant, got into the car with the victim and Davis. Davis and the Appellant drove the victim around at gunpoint, stopping at several different locations. During these stops and while inside the vehicle, the victim was vaginally and anally raped. Also, the victim was forced to perform fellatio and forcibly had cunnilingus performed on her.

The victim was then taken to a motel across the North Carolina state-line. Davis left the vehicle to get a motel room, leaving the victim alone in the vehicle with the Appellant, who was very intoxicated and about to pass out. She peeked from underneath the ski-mask covering her face and saw the gun on the dashboard. She tried to grab the weapon and throw it out the window. The Appellant caught her trying to grab the gun and a struggle

4

ensued. During this struggle, the victim's mask came off, and she saw the Appellant's face. Once inside the motel room, she was again raped. During the early morning hours of January 8th, the assailants left the North-Carolina motel taking the victim with them. On this same day, the Appellant and Davis separated company leaving the victim with Davis. Thereafter, Davis wrecked the vehicle. He was successful, however, in obtaining assistance from a local resident in transporting himself and the victim to the Fort Loundon Motel, in Vonore, Tennessee. Davis and the victim entered the room, where Davis eventually passed out on the bed. At this time, the victim escaped to the hotel manager's office, where the manager called the police for assistance. After the police arrived Davis was taken into custody, and the victim was transported to the Sweetwater Hospital for medical attention.

*Id.*, slip op. at 1-2[2], 2002 WL 1400058 at *1.

In support of his habeas corpus petition, Tipton alleges:  (1) denial of effective assistance of counsel, (2) conviction obtained by prosecutorial misconduct, (3) actual/factual innocence, (4) cumulative effect of all errors, (5) right to testify waived by counsel, (6) conviction obtained by suggestive photographic line-up and in-court identification, (7) nurse practitioner allowed to testify as an expert, (8) trial court lacked jurisdiction, and (9) insufficient evidence.  The Attorney General contends the respondent is entitled to judgment as a matter of law based upon procedural default and upon the findings of the Tennessee state courts.

---

[2]Tipton provided the Court with the slip opinion from the Tennessee Court of Criminal Appeals in post-conviction proceedings, as part 3 of collective exhibit A.

5

III.    Procedural Default

The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Tipton cannot file another state petition for post-conviction relief. TENN. CODE ANN. § 40-30-102(a). Accordingly, he has no remedy available to him in the Tennessee state courts for challenging his conviction and is deemed to have exhausted his state remedies.

Tipton's claims that a nurse practitioner was allowed to testify as an expert and that the trial court lacked jurisdiction were presented to the Tennessee courts as a matter of state law only. Also, one of his claims of prosecutorial misconduct, that the prosecutor deliberately introduced false evidence of prior bad acts, was likewise presented to the Tennessee courts as a matter of state law only. As noted earlier, in order to exhaust his state

court remedies for federal habeas corpus purposes, a petitioner must have presented the claim to the state courts as a matter of federal law.

> A federal court will not address a habeas petitioner's federal constitutional claim unless the petitioner has first fairly presented the claim to the state courts. Fair presentation of a federal constitutional issue to a state court requires that the issue be raised by direct citation to federal cases employing constitutional analysis or to state cases relying on constitutional analysis in cases with similar fact patterns.

*Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) (citation omitted).

> The federal courts do not have jurisdiction to consider a claim in a *habeas* petition that was not "fairly presented" to the state courts. A claim may only be considered "fairly presented" if the petitioner asserted both the factual and legal basis for his claim to the state courts. This court has noted four actions a defendant can take which are significant to the determination whether a claim has been "fairly presented": (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citations omitted). Accordingly, Tipton has defaulted his claims that a nurse practitioner was allowed to testify as an expert, that the trial court lacked jurisdiction, and that the prosecutor deliberately introduced false evidence of prior bad acts.

With respect to the remaining claims for relief, the Attorney General contends the respondent is entitled to judgment as a matter of law based on the findings of the Tennessee state courts.

IV.   State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Tipton may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court.  In addition, findings of fact by a state court are presumed correct and Tipton must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1).  A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413.  A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.

8

V.    Discussion of Remaining Grounds for Relief

*A.  Ineffective assistance of counsel.*

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Tipton must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a

conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.* at 691-92.

Tipton raised the following allegations of ineffective assistance of counsel in post-conviction proceedings, as summarized by the Tennessee Court of Criminal Appeals:

> Fourth, the Appellant contends that he was denied effective assistance of counsel, both at trial and on appeal, due to counsel's:
>
> (1) failure to investigate, make objections to or challenge prosecution's evidence;
>
> (2) failure to investigate unknown hairs found in the victim's car and fingerprints found at the crime scene;
>
> (3) failure to object to false evidence of PRIOR BAD ACTS introduced during the victim's testimony which was highly prejudicial;
>
> (4) failure to move for mistrial or request curative jury instruction to the inadmissible and prejudicial PRIOR BAD ACTS evidence;
>
> (5) failure to adequately cross-examine the victim who was the only link between [the Appellant] and the crime;
>
> (6) failure to show the jury the irreparable tainted mis-identification of [the Appellant] as the 2nd assailant which occurred when the victim selected his very same photo as "identical" in the 2nd line-up after failing to do so in the 1st line-up;
>
> (7) failure to show the jury that the victim lost her eyeglasses AND contact lenses and was without their benefit on the NIGHT of incident;
>
> (8) failure to present any defense theory;
>
> (9) failure to file a Motion for Severance;

(10) failure to object to prosecutor's improper comments on [the Appellant's] post-arrest silence;

(11) ordering [the Appellant] to stand up at trial for the victim to identify him as her 2nd assailant; and

(12) failure to raise on direct appeal trial counsel's waiver of the Appellant's right to testify.

*Tipton v. State*, slip op. at 7-8, 2002 WL 1400058 at *6 (footnote omitted). These are essentially the claims raised by Tipton in his habeas corpus petition. To the extent he alleges additional claims of ineffective assistance of counsel, such claims would be barred by procedural default.

The state appellate court considered each claim of ineffective assistance of counsel in turn. In doing so, the court noted that the standard of review is the two-prong test set forth in *Strickland v. Washington*. *Id.*, slip op. at 8-9, 2002 WL 1400058 at **6-7. The court then rejected each allegation of ineffective assistance of counsel:

### A. Trial counsel's failure to investigate, make objections to or challenge prosecution's evidence.

The Appellant submits that trial counsel failed to show the suggestiveness of the second photo line-up; also, trial counsel failed to call any witness, specifically, Federal Bureau of Investigation (FBI) Agent James Bentley, to testify that the victim never clearly saw her second assailant's face. In support of this proposition, the Appellant points to an investigative report prepared by Agent Bentley. In the investigative report, Agent Bentley states, "[a Maryville police officer] advised that while [the victim] had never clearly seen the second individual's face, ... an adequate composite drawing [was composed based information provided by the victim,] which bore a remarkable resemblance to RODNEY TIPTON." The Appellant's argument is better summarized as follows: trial counsel failed to discover this report, and if trial counsel had discovered such evidence, it would have shown that the victim did not positively identify the Appellant during the first photo array.

11

However, at trial the victim testified that she saw the Appellant's face for a sufficient period of time to make an identification. Documentation introduced at trial overwhelming showed that the victim positively identified the Appellant during the first photo array. Furthermore, the victim was extensively cross-examined about her ability to make an identification of the second assailant. Because the Appellant has failed to show any prejudice, this issue is without merit.

**B.  Trial counsel's failure to investigate unknown hairs found in the victim's car and fingerprints found at the crime scene.**

The Appellant contends that trial counsel's failure to investigate unknown hairs found in the victim's car and fingerprints found at the crime scene "was critical because NO EVIDENCE linked him to the crime except the victim's marginal identification." If the claim is based on a failure to properly investigate, then the evidence or witness must be produced so that the post-conviction judge can properly evaluate the evidence or the witness. The Appellant did not provide any evidence of what a proper investigation into the unknown hairs and fingerprints would have shown. We will not speculate as to what such an investigation might have revealed. Accordingly, we find the Appellant has failed to establish this claim by clear and convincing evidence.

**C.  Trial counsel's failure to object to prior bad act evidence introduced during the victim's testimony.**

Next, the Appellant argues that trial counsel was ineffective for failing "to object to false evidence of PRIOR BAD ACTS introduced during victim's testimony which was highly prejudicial (alleging that Tipton and Davis had broken out of jail, were fugitives from justice and had raped a woman in Georgia using a knife)." Even assuming for argument's sake that trial counsel was deficient in not objecting, we fail to see how, but for this single deficiency, the jury's verdict would likely have been different. The central issue at trial was the victim's ability to identify her second assailant. The challenged evidence was not relevant to this issue. Based upon the totality of proof presented against the Appellant at trial, we find that the Appellant was not denied a fair trial with reliable results. Accordingly, we do not find prejudice.

**D.  Trial counsel's failure to move for mistrial or request curative jury instruction to the inadmissible and prejudicial prior bad act evidence.**

As concluded in paragraph C above, the Appellant was not prejudiced by admission of the questionable evidence of prior bad acts. Accordingly, we conclude that if trial counsel had moved for a mistrial or requested a curative jury instruction, the result of the proceedings would not have been different. Again, because the Appellant has failed to show prejudice, we find this issue to be without merit.

**E.  Trial counsel's failure to adequately cross-examine the victim.**

The Appellant submits that trial "[c]ounsel failed to adequately cross-examine the victim who was the only link between Tipton and the crime." The post-conviction court determined, "From the proof presented the petitioner received vigorous representation that far exceeded the standards for trial attorneys in the Fifth Judicial District." After a review of the record, we agree with the post-conviction court that trial counsel was vigorous in his cross-examination of the victim and in no way could the Appellant's assertion of ineffective assistance of counsel on this ground be supported. Moreover, we are compelled to note that allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics rarely provide a basis for post-conviction relief. Counsel has some discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics.

**F.  Trial counsel's failure to show the jury the irreparable tainted mis-identification of the Appellant as the second assailant.**

The Appellant claims that trial "[c]ounsel failed to show the jury the irreparable tainted mis-identification of Tipton as the 2nd assailant which occurred when the victim selected his very same photo as 'identical' in the 2nd line-up after failing to do so in the 1st line-up." The first photo array was conducted by State authorities on January 9, 1991, two days after the rape. On April 12, 1991, the FBI conducted a second photo array. According to testimony given at both the state and federal trials, the victim positively identified the Appellant as her second assailant on both occasions.

The Appellant essentially argues that the victim did not positively identify him during the first photo array, which tainted the second photo array. However, his claim is based upon certain evidence introduced during the

13

federal trial and is circumstantial at best. Furthermore, the victim assisted in a composite drawing prepared on January 9, 1991, prior to the photo array, which bore a remarkable resemblance to the Appellant. The Appellant has failed to prove by clear and convincing evidence that the victim did not identify him at the first photo array. Accordingly, we find this issue to be without merit.

**G.  Trial counsel's failure to show the jury that the victim lost her eyeglasses and contact lenses and was without their benefit on the night of the incident.**

Next, the Appellant contends, "In a case that SOLELY rested on eyewitness identification, counsel failed to show the jury that the victim lost her eyeglasses AND contact lenses and was without their benefit on the NIGHT of the incident." At the post-conviction hearing, the victim testified that she was able to make a positive identification of the Appellant. The Appellant has failed to show that the proffered evidence would have had any effect on the victim's ability to make such an identification. Because the Appellant has failed to show that he was prejudiced by trial counsel's failure, we conclude that this issue is without merit.

**H.  Trial counsel's failure to present any defense theory.**

The Appellant specifically argues that trial counsel "failed to present 2 alibi witness [sic] McHaffie & Gurley who [A] placed Tipton away from the time and place of the crime; ... and [B] supported Tipton's ONLY defense of mis-identification...." At the post-conviction hearing, trial counsel testified,

> ... And I have--again without thorough review of the file, I have some recollection of an alibi witness that was provided by Mr. Tipton and I recall either the inability to find this witness or a determination made that this witness's credibility was so suspect that he may not have been called.

It is apparent from trial counsel's testimony that he made a tactical decision not to use the Appellant's alibi witnesses. As previously stated, this court should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Therefore, we find that the Appellant has failed to prove that trial counsel's performance was deficient.

14

**I. Trial counsel's failure to file a motion for severance.**

At the post-conviction hearing, trial counsel testified that he believed "previous counsel raised the issue and it was denied." He also testified, "from a tactical standpoint, I would have liked nothing better that to be severed from Mr. Davis. However, we could find no basis in law or fact that would lead us to believe whatsoever that a severance would have been granted." The Appellant contended at the post-conviction hearing that he would have received a fair trial only if his case had been severed from Davis', so he could have called Davis as a witness in his defense. However, the Appellant has not provided this court with any evidence that Davis would have testified in his defense. Furthermore, we agree with trial counsel that severance is not warranted under current law. Trial counsel is under no duty to file meritless motions. Because deficient performance has not been proven, this issue is without merit.

**J. Trial counsel's failure to object to the prosecutor's improper comments on the Appellant's post-arrest silence.**

Next, the Appellant claims that trial counsel failed to object to "prejudicial remarks during closing argument referring to Tipton's failure to testify, lack of explanation of certain evidentiary discrepancies, and suggesting that Tipton was guilty because he stood up 'VOLUNTARILY' in court for victim's identification." Our courts have afforded wide latitude to counsel in arguing cases to the jury. Although arguments must be temperate, relevant to the material issues, and predicated on the evidence, both the prosecution and the defense must be allowed to argue not only the facts in evidence, but also any reasonable inferences therefrom. Contrary to the Appellant's assertion, we fail to ascertain how the State's closing argument translates into an argument referring to his failure to testify. As for the State commenting on the lack of explanation of certain evidentiary discrepancies, such is the nature of a closing argument. Finally, trial counsel did object when the prosecution suggested that the Appellant was guilty because he stood up voluntarily, and the post-conviction sustained the objection and cautioned the jury with regard to the statements of counsel. Accordingly, we find no error; therefore, trial counsel was not deficient for failing to object. This claim is without merit.

**K. Trial counsel's order to the Appellant to stand up at trial for the victim to identify him as her second assailant.**

Trial counsel testified at the post-conviction hearing,

I think the instance you're referring to is, upon Ms. Blair, the affiant's identification, Mr. Tipton--at that point, I suggested to Mr. Tipton that he just stand. I did that on the premise that we were taking sort of a head-on approach to Ms. Blair in this case and that in my mind and what I believe in the Jury's minds there was no secret that Ms. Blair had been referring for the last hour to Rodney Tipton.

In hindsight, absolutely, I wished I had not asked Mr. Tipton to stand there. And I told him that, I think, at the end of the trial....

Again, we note that counsel has some discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics. Accordingly, we find that the Appellant's assertion of ineffective assistance of counsel on this ground cannot be supported.

**L. Appellate counsel's failure to raise on direct appeal trial counsel's waiver of the Appellant's right to testify.**

Because we have previously determined that the Appellant did not prove by clear and convincing evidence that he was denied his right to testify at trial, we find that trial counsel was not ineffective for failing to raise the issue on direct appeal. This issue is meritless.

*Id.*, slip op. at 9-13, 2002 WL 1400058 at **7-11 (citations omitted).

Tipton has failed to rebut, by clear and convincing evidence, the findings of the state courts and they are presumed correct by this court. In addition, this court has reviewed the transcript of the post-conviction evidentiary hearing [Court File No. 15, Second Supplemental Notice of Filing, Transcript of Testimony, Parts I-III); the foregoing findings by the Tennessee Court of Criminal Appeals are supported in the record. That being so, this

16

court concludes that the appellate court's determination that Tipton received the effective assistance of counsel was neither contrary to, nor did it involve an unreasonable application of, federal law as established by the U.S. Supreme Court in *Strickland v. Washington*. Accordingly, Tipton is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel.

## B.  Prosecutorial Misconduct

As noted, Tipton procedurally defaulted his claim that the prosecutor deliberately introduced false evidence of prior bad acts.  His remaining claim of prosecutorial misconduct is that the State withheld exculpatory evidence indicating that the victim could not identify Tipton as the second assailant.   The Tennessee Court Of Criminal Appeals, in post-conviction proceedings, framed the issue as follows:

> The Appellant contends on appeal that his conviction was based on the unconstitutional failure of the prosecution to disclose exculpatory evidence, citing as authority *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he contends that the State withheld the following exculpatory evidence:
>
>> The State suppressed ... evidence showing victim's inability to identify Tipton. Exh 18 @ 17: FBI statement dated 2/15/91 *after* 1st photo line-up: 2nd assailant still "an unknown individual" known as "Road Dog." Exh 19: FBI report dated 4/9/91 stating victim never saw 2nd assailant's face, *after* 1st photo line-up concluded. Exh 20: FBI letter dated 3/14/91 stating the victim only identified Davis *after* 1st line-up concluded. Exh 22: Police Report dated 2/1/91 referring to "2nd unknown subject" after 1st photo line-up concluded. Exh 24: Police Report dated 1/17/91 asking the feds to prosecute Davis only, on weapons charges, after 1st photo line-up concluded.

> ... The police never disclosed any of it's
> DOCUMENTATION of 1st line-up. (*COMPARE TO* their
> revealed 2nd line-up documentation, Exh 2). At the time of post
> conviction evidentiary hearing, State Agents admitted that said
> documents were *STILL* in their files, *STILL* undisclosed to
> Tipton. R, IV @ 14.

*Tipton v. State*, slip op. at 14, 2002 WL 1400058 at **11-12. The appellate court then

concluded Tipton had failed to demonstrate a *Brady* violation.

> Relief under *Brady* is not available unless the Appellant can establish
> that the evidence improperly withheld was material to the defendant. In order
> to determine the materiality of undisclosed information, the reviewing court
> must ascertain whether in the absence of the information the defendant
> received a fair trial, understood as a trial resulting in a verdict worthy of
> confidence. Thus, in order to prove a *Brady* violation, a defendant must show
> the "the favorable evidence could reasonably be taken to put the whole case
> in such a different light as to undermine confidence in the verdict." The
> Appellant bears the burden of demonstrating the elements of this claim by a
> preponderance of the evidence.

> The Appellant submits that the exculpatory evidence referred to proves
> that the victim did not positively identify him during the first photo array.
> However, as previously stated, this evidence is circumstantial at best. At trial
> the victim testified that she saw the Appellant's face for a sufficient period of
> time to make an identification. Documentation introduced at trial
> overwhelming showed that the victim positively identified the Appellant
> during the first photo array. The victim was cross-examined extensively about
> her ability to make an identification of her second assailant. Furthermore, the
> victim assisted in a composite drawing prepared on January 9, 1991, prior to
> the photo array, which bore a remarkable resemblance to the Appellant. We
> find that the Appellant has not shown that the evidence was exculpatory to the
> Appellant or material to the defense. This issue is without merit.

*Id.*, slip op. at 14-15, 2002 WL 1400058 at *12 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434,

(1995)) (citations omitted).

18

In *Brady*, the U.S. Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Impeachment evidence as well as exculpatory evidence "falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

The state court's decision that Tipton failed to demonstrate prosecutorial misconduct was not contrary to, nor did it involve an unreasonable application of, Supreme Court precedent as established in *Brady v. Maryland*. Thus, Tipton is not entitled to habeas corpus relief on his claim of prosecutorial misconduct.

## C. Actual Innocence

Tipton claims he is factually innocent because the prosecution presented no evidence to corroborate the victim's identification of him. He also alleges the physical evidence pointed to another unknown assailant. On direct appeal, the Tennessee Court of Criminal Appeals found the evidence was sufficient to support Tipton's conviction. *State v. Davis*, 872 S.W. 2d at 954-55. In post-conviction proceedings, the appellate court found no additional proof of actual innocence. *Tipton v. State*, slip op. at 15, 2002 WL 1400058 at *13. These

19

findings are neither contrary to, nor do they involve an unreasonable application of, federal law. *See Mitchell v. Rees*, 114 F.3d 571, 579 n.12 (6th Cir. 1997) ("Briefly stated, a fundamental miscarriage of justice occurs when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent.") (citations omitted).

## D. Cumulative Effect

Tipton alleges that he is entitled to habeas corpus relief based upon the cumulative effect of all errors at his trial. The Sixth Circuit has held that, regardless of whether each of a petitioner's alleged errors, standing alone, would require a finding of deprivation of due process, a court may look to whether the cumulative effect of the errors was such that the petitioner was denied fundamental fairness. *See, e.g., Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle*, 703 F.2d 959, 968 (6th Cir. 1983). These cases, however, were decided prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which amended 28 U.S.C. § 2254 with regard to the standard of review in habeas corpus cases.

The Supreme Court has not held that a district court may look to the cumulative effects of trial court errors in deciding whether to grant habeas corpus relief. *See Davis v. Burt*, 100 Fed.Appx. 340, 351 (6th Cir. 2004) ("Cumulative error is not a basis for granting habeas relief in non-capital cases."); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) ("The Supreme Court has not held that constitutional claims that would not individually support

habeas relief may be cumulated in order to support relief."); *Lorraine v. Coyle*, 291 F.3d 416,

447(6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can

be cumulated to grant habeas relief.").

Accordingly, Tipton is not entitled to relief on his cumulative effect claim. In

addition, because there is no Supreme Court precedent in this regard, Tipton cannot

demonstrate that the Tennessee Court of Criminal Appeals' rejection of his cumulative effect

argument was either contrary to or an unreasonable application of clearly established federal

law as required by *Williams*.

## E.  Right to Testify

"[A] criminal defendant has a fundamental constitutional right to testify on his own

behalf." *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997) (citing *Rock v. Arkansas*, 483

U.S. 44, 51-53 (1987)).  Tipton did not testify at trial; he alleges his attorney unilaterally

waived his right to testify.  The Tennessee Court of Criminal Appeals considered, and

rejected this claim:

At the post-conviction hearing, trial counsel testified,

Q. Did you and Mr. Tipton discuss whether or not he would be testifying at trial?

A. Yes, we did, at length.

Q. Did Mr. Tipton want to testify?

A. I can state that there's no question that Mr. Tipton was interested in testifying. I can tell you as defense counsel, in

reviewing all of these facts that I was very strong in my belief that Mr. Tipton should not testify in this case. I recall specifically having discussions both at this trial, as well as the federal trial, as to whether or not he would testify. And I can candidly say that as the one making, I guess, the tactical decisions in the case, that I urged him not to do so. I can also say that, albeit with reluctance, Mr. Tipton, certainly to my belief, agreed that he would not testify and in fact did not, in either case.

Q. But it's your position that you never told him that you would not allow him to testify?

A. No. I've never done that with any client and will not do that with any client.

...

Q. And at that time, do you believe that he understood that while that was your strong opinion, that it was no more than that, that he still did have the right to testify?

A. Yes.

Q. Do you remember--do you recall affirmatively telling him that he, regardless of what you were telling him, still had a constitutional right to testify? Do you remember telling him that?

A. In those exact words, no; but something very similar, yes. And I say this from recollection of all my cases that you have an absolute right to testify and if you decide to go against my advice in a situation just like Mr. Tipton where I had advised him not to testify, that I will honor that request, but professionally I may say something to the effect I feel that you're making a mistake by taking the stand in this case.

Q. Did you ever tell him that you would just sort of let him sit up there on his own, that you wouldn't–

A. No, not at all.

Q.--handle the questioning or anything?

A. (Shakes head from side to side.)

The post-conviction court obviously accredited trial counsel's testimony that the Appellant personally waived his right to testify at trial. This court will not reweigh or reevaluate the evidence; nor substitute our inferences for those drawn by the post-conviction judge, unless the preponderance of the evidence is otherwise. Questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are resolved by the post-conviction judge not this court. Accordingly, after a review of the record before this court, we conclude that the Appellant has failed to prove by clear and convincing evidence his allegation that he was denied his right to testify at trial.

*Tipton v. State*, slip op. at 5-7, 2002 WL 1400058 at *5 (citations omitted).

The findings by the state courts in this regard were neither contrary to, nor did they involve an unreasonable application, of federal law. *See, e.g. United States v. Webber*, 208 F.3d 545 (6th Cir. 2000).

Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.

*Id*. at 551. *See also United States v. Teague*, 953 F.2d 1525, 1534-35 (11th Cir.1992) (en banc) (legal advice, without coercion, concerning a defendant's exercise of the right to testify infringes no right); *Knox v. Morris*, No. 89-3731, 1990 WL 106789 *1 (6th Cir. July 30, 1990) ("It was not incumbent upon the trial court to advise Knox of his right to testify or to establish his waiver of that right on the record.").

### F. Suggestive Photo Line-Up / In-Court Identification

Tipton claims that his conviction was obtained by an overly suggestive photographic line-up and an improper in-court identification. The Tennessee Court of Criminal Appeals considered and rejected Tipton's claim on direct appeal:

> Appellant Tipton argues that the photographic array presented to the victim, which contained his photograph, was unduly suggestive and violated his constitutional rights.
>
> Due process is violated if, under the totality of the circumstances, the identification procedure is found to be so suggestive as to give rise to "a very substantial likelihood of irreparable misidentification." A trial court's finding that the identification procedure was not suggestive is conclusive on appeal unless the evidence preponderates against the judgment.
>
> ...
>
> Here, the photographic array consisted of six photographs of men with characteristics very similar to appellant Tipton. All of the individuals had dark hair, a mustache and were Caucasian, just as appellant Tipton. All of the photographs were of men within the appellant's age group. As pointed out by defense counsel, the head shot of appellant Tipton was slightly larger than the other photographs in the array. However, the size of the head shots of the various individuals in Exhibit 1, which contains the photographs of the array, clearly shows that the head shots varied in size. Therefore, appellant Tipton's photograph would not be unconstitutionally suggestive.
>
> Appellant Tipton does not expressly challenge his in-court identification by the victim. However, the general rule is that an in-court identification is inadmissible if it was tainted by an unconstitutional pretrial identification. Holt v. State, 591 S.W.2d 785, 789-790 (Tenn.Crim.App.1979). In the case at bar, the identification of the appellant from the photographic array was not unconstitutionally suggestive, so it could not have impermissibly tainted the in-court identification.

*State v. Davis*, 872 S.W. 2d at 955-56 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)) (citations omitted).

The state court's findings are neither contrary to, nor did they involve an unreasonable application, of federal law under the standard established in *Simmons*. Accordingly, Tipton is not entitled to habeas corpus relief on this claim.

### G. Insufficient Evidence

Tipton alleges the only evidence of his involvement in the crime was the victim's identification and thus the evidence was insufficient to support his conviction. The Tennessee Court of Criminal Appeals considered and rejected this claim on direct appeal.

> The testimony of the victim, as corroborated by her statements to medical personnel and to the police, clearly support the verdict of guilty against appellant Tipton. When shown a photo array which included the appellant, she clearly identified appellant Tipton as her second assailant. Although no other witnesses identified appellant Tipton as being with the victim during any of the incidents, the testimony of the victim is clearly sufficient to convict the appellant in this state.

*State v. Davis*, 872 S.W. 2d at 955.

In a federal habeas corpus proceeding in which a state prisoner challenges the sufficiency of the evidence supporting his conviction, the petitioner "is entitled to a determination whether the record evidence could support a finding of guilt beyond a reasonable doubt." *Moore v. Duckworth*, 443 U.S. 713, 714 (1979). However, the petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 324 (1979). *See Brofford v. Marshall*, 751 F.2d 845, 856 (6th Cir. 1985).

When reviewing a jury's verdict under a sufficiency of the evidence standard, a court must consider all the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. at 319. Witness credibility is an issue to be left solely within the province of the jury, *Deel v. Jago*, 967 F.2d 1079, 1086 (6th Cir. 1992); *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988), and substantial deference should be given to the trier of fact. *United States v. Ayotte*, 741 F.2d 865, 867 (6th Cir. 1984). "[T]he federal court sitting in habeas should not attempt to substitute its own opinion for that of the jury which convicted the petitioner." *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988). A conviction should be affirmed if *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986), *aff'd*, 483 U.S. 171 (1987).

As previously noted, the state court record on direct appeal is not available. Nevertheless, the Tennessee Court of Criminal Appeals on direct appeal made specific findings of fact upon which it based its decision that the evidence was sufficient to support Tipton's conviction. *See* Rule 5(c) of the Rules Governing Section 2254 Cases In The United States District Courts ("If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.).

In addition, as a result of the same incident which gave rise to their state court convictions, Tipton and co-defendant Davis were convicted in this court of kidnapping and

26

transporting the victim across state lines, and using a firearm during a crime of violence. The convictions were affirmed on appeal. *United States v. Tipton*, 11 F.3d 602 (6th Cir. 1993). The Sixth Circuit summarized the evidence against Tipton and Davis as follows:

> According to the testimony of Cynthia Cheryl Blair, on January 7, 1991, at around midnight, Blair had just gotten into her car in a grocery store parking lot in Maryville, Tennessee, when she noticed a small, silver or silver-beige car pull up behind her. The car looked like a Toyota or a Datsun. Then, a man wearing a ski mask and wielding a gun forced his way into Blair's car. At trial, Blair identified the man as Defendant Robert Davis. While Davis drove the car, Blair thought she saw the silver car from the parking lot following them. Davis instructed Blair to cover her face with a towel so that she could not see his "buddy" or his "buddy's car." He then stopped and picked up a man whom Blair identified at trial as Defendant Rodney Tipton.

> After driving some distance and taking Blair's money to buy gas, Davis stopped the car. The two men pulled Blair from the car, undressed her, forced her to perform oral sex on both of them, and raped her. Tipton also sodomized her. They then allowed her to dress, and replaced the towel with the ski mask, placed backwards over her head so that she could not see. They re-entered the car, placing Blair on Tipton's lap in the passenger seat. Tipton went through Blair's purse, which contained $300. After they stopped to buy beer and liquor, the defendants removed Blair's clothes again, put her back on Tipton's lap, and Tipton raped her while Davis drove.

> Looking for a motel, Davis drove the car across the Tennessee border into North Carolina. He stopped at a motel that Blair later identified as the Crossroads of Time Motel. While Davis was out of the car arranging for a room, Blair lifted her mask over one eye and reached for a gun that was on the dashboard. Tipton grabbed her arm and the mask fell off of her head. She then saw Tipton's face from about one foot away, illuminated by a bright overhead light approximately 25 feet away. Within a few seconds, Tipton managed to wrestle the gun away from her and to pull the mask back over her head. He threatened to kill her.

> Davis returned. The men told her to get dressed, and then removed her mask, instructing her to cover her eyes. She managed to see the outside of the motel while they pulled her into the motel room. Inside, they replaced the mask. Davis raped her again. Then, Tipton shoved the gun to her vagina and

threatened to "blow her away." Davis talked him into raping her again instead. One of the men removed the ski mask in order to kiss her face. She tried not to see the men's faces, but she did see part of the motel room clearly. After they got dressed, Davis blindfolded her with a pillowcase from the motel room, and they returned to the car.

After driving for a while, they stopped and Davis raped her again. Some time later, Tipton got out and left. Davis continued driving. Soon after, Davis lost control of the car, swerved off of the road and into a ditch. Davis went to a nearby trailer to ask for help. Willis Bivens came out of the trailer and tried, unsuccessfully, to pull the car out. Then Bivens drove Davis and Blair to the Fort Louden Motel in Vonore, Tennessee. Once they were inside a motel room, Davis fell asleep, and Blair crept out. She went to the motel office and asked the clerk, Joyce Atkins, to call the police. The police arrived within a few minutes and arrested Davis. According to the testimony of one of the police officers, they found the pillowcase from the Crossroads of Time Motel in the Fort Louden Motel room.

After Blair made a statement to the police at the motel, she was taken to a hospital. The next day, she worked with Detective David Michael Graves of the Maryville Police Department in order to make a detailed composite picture of Tipton, though she did not yet know his name. Detective Graves testified that he passed the composite onto investigators without having any name associated with the picture. Officer Randall Merks of the Blount County Sheriff's Department testified that, when he received the picture, he felt it resembled Tipton. He presented Blair with an array of six photographs, from which she selected an eight year old photograph of Tipton. Tipton was arrested shortly thereafter.

Blair's testimony was plausible, consistent, and surprisingly detailed. Many details in her testimony were corroborated by Joyce Atkins, Willis Bivens, Vonore Police Chief Harold Davis, Crossroads of Time Motel worker Ricky Hartsell, Detective Graves, Officer Merks, and gas station owner Ben Underwood. The jury saw the composite picture; apparently, they agreed that it looked like Tipton.

In addition, Tipton's girlfriend, Peggy Cooper, testified that, as of January 7, 1991, she and Tipton were living together in a trailer approximately five minutes from the grocery store parking lot where Blair was abducted.

That evening, Tipton had left with Davis in Tipton's grey Datsun. Tipton did not return home until the next morning.

Cooper's testimony was contradicted by the testimony of a friend of Tipton's, Clifford Leroy Parker, who stated that Tipton sold his grey Datsun on January 4, 1991, and that Parker never saw Tipton with it again. Parker also testified that he had never seen Tipton carrying a pistol before.

The testimony of people who examined Blair on January 8, 1991, Dr. Edmund Lane and X-ray department head Rita Richesin, revealed that Blair was bruised, but not in the vaginal or anal areas. Dr. Lane testified that "there was a possibility that [Blair] had been raped," but no physical proof of it.

There was no physical evidence--no fingerprints, hair, or semen--linking Tipton to the crime. The only evidence that Tipton was one of the perpetrators was Blair's description of her assailant and her identification of Tipton based upon Blair's having seen him for only a few seconds during the struggle for the gun in the parking lot of the Crossroads of Time Motel.

The defendants had already been tried and sentenced in Tennessee state court when trial was held in federal court on January 7-9, 1992. The federal jury found both Defendants guilty on both counts. The district court sentenced Davis to 262 months imprisonment on the kidnapping charge and 60 months on the firearm charge. It sentenced Tipton to 188 months on the kidnapping charge and 60 months on the firearm charge. This appeal followed.

*Id*. at 604-605.

This court has reviewed the record of Tipton's federal conviction, including the trial transcript, and finds the summary by the Sixth Circuit to be accurate. As the Sixth Circuit noted, the victim's testimony was "surprisingly detailed." *Id*. at 605. This court notes that the victim's testimony in the federal trial was consistent with her testimony in the state trial, as summarized by the Tennessee Court of Criminal Appeals. Under the circumstances, the factual findings by the Tennessee Court of Criminal Appeals are presumed correct; Tipton

has failed to rebut the presumption of correctness by clear and convincing evidence.[3] Thus, the finding by the Tennessee Court of Criminal Appeals that the evidence was sufficient to support Tipton's conviction was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law.

VI.  <u>Conclusion</u>

Petitioner Tipton is not entitled to habeas corpus relief and for that reason the respondent's motion for summary judgment will be **GRANTED**.  Tipton having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**.  28 U.S.C. § 2253(c).  The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of the FEDERAL RULES OF APPELLATE PROCEDURE.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan_____
UNITED STATES DISTRICT JUDGE

---

[3]In its order denying the State's motion to withdraw the record, the Tennessee Court of Criminal Appeals noted that a copy of the trial transcript, consisting of 1,046 pages, was made and shipped to Tipton on July 8, 1993.  Thus, Tipton had access to the trial transcript.

30